UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:17CR 9 (JAM) |
| v. | VIOLATION: |
| COREY BRINSON | 18 U.S.C. § 1957 (Unlawful Monetary Transaction) |

INFORMATION

The United States Attorney charges:

COUNT ONE
(Unlawful Monetary Transaction)

Relevant Entities

1.  At all relevant times, the defendant, COREY BRINSON, was an attorney licensed to practice law in Connecticut.

2.  BRINSON maintained an Interest on Lawyer Trust Account ("IOLTA") ending in 5573 at People's United Bank, N.A. ("People's").

3.  People's was a financial institution based in Bridgeport, Connecticut, and was insured by the Federal Deposit Insurance Corporation.

The Mail and Wire Fraud Scheme (Specified Unlawful Activity)

4.  Between approximately October 2010 and July 2016, BRINSON served as the "securities counsel" for several companies whose securities were marketed and sold to the investing public (the "Subject Transactions") by a client of BRINSON's who has been charged separately ("Client 1") and his business associates.

5.  BRINSON, Client 1, and Client 1's business associates engaged in a scheme and artifice to defraud investors and to obtain money and property from

investors by means of materially false and fraudulent representations regarding the securities marketed and sold in the Subject Transactions.

6. It was part of the scheme and artifice to defraud that, as securities counsel, BRINSON signed, and permitted others to affix his signature to, false and misleading attorney opinion letters that were designed to provide assurances to securities transfer agents and prospective investors involved in the Subject Transactions. Among other things, these opinion letters falsely certified that BRINSON, as an attorney, had reviewed corporate records and filings and was satisfied with the adequacy of the companies' public disclosures.

7. It was further part of the scheme and artifice to defraud that those false and misleading opinion letters were provided to securities transfer agents and prospective investors with the intent that the letters would influence those agents and investors in making their discretionary economic decisions, including whether to enter into the Subject Transactions.

8. It was further part of the scheme and artifice to defraud that BRINSON received deposits into his IOLTA of millions of dollars in proceeds of the Subject Transactions, taking in funds principally from investors that those investors intended to be used for the purchase of securities and to fund operations at the underlying companies, based in part upon the false and misleading attorney opinion letters.

9. In furtherance of the scheme and artifice to defraud, BRINSON and his confederates used and caused to be used the United States mail and interstate wires including by causing (a) investors to mail checks from other states to Connecticut for

deposit into BRINSON's IOLTA; (b) investors to electronically transfer funds via wire from other states into BRINSON's IOLTA in Connecticut; and (c) the transmission via mail and e-mail of the false and misleading attorney opinion letters from Connecticut to investors and agents outside of Connecticut.

### BRINSON's Use of Proceeds from the Mail and Wire Fraud Scheme

10. As described above, BRINSON received through his IOLTA millions of dollars of proceeds from the mail and wire fraud scheme. Rather than use those proceeds to purchase securities and fund operations at the underlying companies, Client 1 and others directed BRINSON to distribute nearly all the money to relatives, associates, and shell companies associated with, and/or under the control of, Client 1 and his business associates.

11. In exchange for providing this service, BRINSON received a percentage—typically 5%—of the investor funds that passed through his IOLTA. These payments included legal fees for miscellaneous legal services, unrelated to the Subject Transactions, that BRINSON provided to Client 1. In addition, BRINSON also received payment for preparing the opinion letters described above.

12. In total, between approximately October 2010 and July 2016, BRINSON engaged in about 85 monetary transactions through his IOLTA involving criminally derived property having a value in excess of $10,000.

13. Among those 85 transactions, on or about October 28, 2015, in the District of Connecticut, BRINSON knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, involving one or more

financial institutions that are engaged in, and the activities of which affect, interstate commerce, such property having been derived from specified unlawful activity, that is, wire and mail fraud in violation of Title 18, United States Code, Sections 1341 and 1343 as described in this Information, by issuing a check in the amount of $12,100 that was drawn on his IOLTA ending in 5573 at People's to pay the private school tuition of Client 1's child.

All in violation of Title 18, United States Code, Section 1957.


UNITED STATES OF AMERICA

_____
DEIRDRE M. DALY
UNITED STATES ATTORNEY

_____
AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY

_____
PETER S. JONGBLOED
ASSISTANT UNITED STATES ATTORNEY