UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 3:17CR9(JAM) |
| COREY BRINSON | : | July 31, 2020 |

GOVERNMENT'S PARTIAL OPPOSITION TO MOTION
FOR EARLY TERMINATION OF SUPERVISED RELEASE

The Government respectfully submits this memorandum to assist the Court in deciding the defendant Corey J. Brinson's motion for early termination of his supervised release term. (Doc. 38).  As explained below, termination of the defendant's supervision less than midway through his three-term is not warranted at this time given the seriousness of the criminal conduct he engaged in as an attorney and the benefits derived from continued supervision.  The Government does not object to the termination of supervision should the defendant successfully complete the second year of his supervision on April 21, 2021, nearly nine months from now.

I.  Background

From roughly October 2010 until July 2016, the defendant abused his position as an attorney so as to facilitate a multimillion-dollar investor fraud.  He lent his name, law practice, and attorney trust account to a client, who was running an investor fraud scheme out of the defendant's law office in downtown Hartford.  The scheme (commonly known as a "pump and dump") involved the fraudulent promotion and sale of worthless securities issued by a series of shell corporations controlled by the client's associates.  This conduct included the defendant laundering more than $3 million in investor funds through his attorney trust (IOLTA) account.

On January 20, 2017, the defendant pleaded guilty to a one-count information charging him with money laundering, in violation of 18 U.S.C. § 1957, with respect to the scheme. Docs. 2 (Plea transcript), 3 (Information). The applicable United States Sentencing Guidelines was 51 to 63 months of imprisonment. Doc. 15 (PSR) ¶ 99. In November 2016, the Connecticut law license he received in 2005 had been placed under indefinite suspension. PSR ¶ 84.

On April 13, 2017, this Court conducted a sentencing hearing and sentenced the defendant to 35 months in prison, followed by a three-year term of supervised release and ordered restitution stemming from the defendant's involvement in the fraud. Doc. 31 at 116 (transcript); Doc. 37 (amended judgment). The revised restitution amount is $1,410,610. Doc. 37. Among the conditions of supervised release, the Court ordered that the defendant pay restitution, jointly and severally with other defendants convicted of participating in the scheme, in a lump sum or if unable to pay in a lump sum, any remaining balance $1,000 per month or 30% of his gross monthly income, whichever is greater. *See* Doc. 37 (condition (3)).

According to the Unites States Probation Office, on June 13, 2017 the defendant reported to prison and began serving his 35-month prison sentence. Approximately 16 months later on October 25, 2018, he was released to a half-way house where he remained under the supervision of the Bureau of Prisons until April 22, 2019 when he started serving the three-year period of supervised release the Court imposed. The supervision is set to end on April 21, 2022. To date, the defendant has paid a total of $59,328.36 in restitution from May 2017 to July 2020 in varying monthly payments ranging from $75 to $33,418.36. Based on discussion with the U.S. Probation Officer supervising the defendant, the defendant is in compliance with his supervision and is on the U.S. Probation Office's minimum level of supervision.

II.      <u>Legal Standard</u>

Title 18, Section 3583(e)(1) provides that the Court may, after considering a number of factors,[1] "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."  Courts have held that "[e]arly discharge is appropriate to 'account for new or unforeseen circumstances' not contemplated at the initial imposition of supervised release.  Changed circumstances that justify early termination include a defendant's exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals."  *United States v. McKay*, 352 F. Supp.2d 359, 360-361 (E.D.N.Y. 2005) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

The decision whether to grant early termination of supervised release rests within the sound discretion of the court.  *United States v. Rasco*, 2000 WL 45438 at *3 (S.D.N.Y., Jan. 19, 2000).  Early termination, however, is "not warranted as a matter of course." *United States v. Herrera*, 1998 WL 684471 at *2 (S.D.N.Y., Sept. 30, 1998).  A defendant has the burden to demonstrate that the circumstances warrant early termination. *Rasco*, 2000 WL 45438 at *3 ("Neither the statute nor the relevant case law places an affirmative obligation upon the government to make a showing of compelling penal need before a defendant will be required to complete a validly imposed term of supervised release.  If the defendant desires to have that period shortened he must show that the circumstances warrant it, not that the government cannot prove otherwise.").  Full compliance with the terms of supervised release is expected and does

---

[1] The factors are identified as those set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7) and are briefly discussed below.

not justify early termination. *Rasco*, 2000 WL 45438 at *2; *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (finding that defendant's compliance "with the terms of his supervision is commendable, but ultimately that is what is expected of him."); *see also United States v. Weintraub*, 371 F. Supp. 2d 164, 167 (D. Conn. 2005).

III.    Discussion

The defendant's overriding reason for seeking an early termination of supervision is that he is unable to apply for readmission to practice law in Connecticut for a year after his supervision ends. The defendant's current circumstances are of his own making. Any hurdles he perceives in seeking readmission to Connecticut bar, including the need to complete his sentence in this case, are part of the consequences of using his law license to defraud others.

In support of his motion, the defendant asserts that if readmitted to practice law, then he will earn more money and be able to pay more toward the remaining $1.3 million in restitution. He expresses this aspiration of wanting to earn more money in various ways in his memorandum. Def. Mem. at 1 ("best chance to improve his own circumstances, and to make more substantial restitution payments to his victims, rests with returning to the practice of law"), at 5 (the defendant's "best chances to make meaningful restitution payments in the future would come from having the opportunity to return to the practice of law sooner rather than later"), at 12 (supervised release interferes with the defendant's "vocational opportunities inasmuch as he cannot make use of his educational and vocational training until he is able to re-apply for admission to the bar") (the defendant's "prospect of making continued, and in fact increased, restitution payments because of the process by which he will be considered for reinstatement to the bar"), at 14-15 ("remaining benefit to be obtained from the continued supervision [of the defendant] is outweighed by the reasonably anticipated increase restitution payments likely to

follow upon his return to the practice of law sooner rather than later), at 15 ("constraints on [the defendant's] opportunities to apply for re-admission to the bar limit his earning potential, which in turn restrict what he can pay in restitution).

The defendant, as explained in his memorandum, has achieved successes while under supervision, Def. Mem. at 10, and has paid nearly $60,000 in restitution to the many fraud victims.  This, along with his goal to earn more and pay more money, is commendable.  The defendant properly acknowledges that his chosen activities while under supervision are not highly remunerative, that is, he does not make much money with his Second Chance Firm, LLC, and non-profit work in New York.  Def. Mem. at 5.  If the defendant's true goal was to make the victims whole by paying as much in restitution as possible, which is the underlying reason of his motion, then there are other more lucrative areas he can pursue.  According to the U.S. Probation Office, the defendant's reportable income in 2018 was $52,221.  The average yearly salary in Connecticut is $71,000.  https://www.payscale.com/research/US/State=Connecticut/Salary.  For example, the estimated yearly salary of a truck driver is $75,007 and a sales representative is $68,394 in Connecticut.  https://www.indeed.com/salaries/Salaries,-Connecticut.  These and other more lucrative jobs could have been obtained during supervision had the defendant's primary goal been to earn more money so as to pay more in restitution.

Whether the defendant is granted the privilege to once again practice law rests with others, who will access his fitness to practice law, particularly in view of the serious criminal conduct he committed as an attorney.  The defendant in seeking early termination of his supervision, however, is holding out the prospect of paying more in restitution to his victims if supervision were to end as soon as possible.  At the sentencing hearing, the Court identified its "major concern" with respect to the defendant and the criminal conduct that brought him before

the Court, that is, his use of his law license to advance the fraud scheme. The Court noted that as an attorney the defendant held "a super trust position," Doc. 31 at 42, and had risen to prominence and achieved a high position, Doc. 31 at 115, 116, and how it was a "sad day for the legal profession" because he had "dishonored the letter and spirit of the attorney ethic rules and deeply undermined confidence that the public would have in the legal profession," Doc. 31 at 113. With respect to the offense, the Court explained to the defendant its "major concern" that caused it alarm was "that you essentially traded on your name and your status and credentials as an attorney to advance a fraud scheme. It wasn't a scheme of your own making, but I think that you were very important to it, to those parts that you had contact with." Doc. 31 at 108-09. This included writing false and misleading opinion letters, misusing his IOLTA account to launder fraud proceeds, and misleading investors by using his status as an attorney to assure and give them confidence in their investments. Doc. 31 at 110-11. The Court later noted that the defendant understood the value of his name and status as an attorney and "essentially you dangled those credentials to be exploited by someone like Meissenn who you knew was engaged in fraud of some sort even if you didn't know the full way that he was doing the fraud." Doc.31 at 112.

    The defendant at sentencing tried to explain his conduct stemmed from being naïve and having no one else at the firm to backstop his decisions. Although the Court did not believe he was as naïve or without counsel as asserted, what is important now in considering this motion is that the defendant claimed those factors contributed to his criminal conduct. Doc. 31 at 111-12.

    The defendant correctly acknowledges that many ifs and no guarantees exist to his being readmitted to practice law in Connecticut as a result of his felonious conduct in this case. Def. Mem. at 5, 12, and 13. The Government understands that following the denial of the

readmission of Joseph Ganim to practice law, fewer attorneys are being readmitted following their felony convictions.

Termination of court ordered supervision is warranted when a true hardship or new circumstance presents itself, such as the unforeseen inability to care for a sick relative or continued supervision jeopardizes a supervisee's opportunity for career advancement.  The defendant, in support of his argument that the current supervision impedes his seeking readmission to practice law, relies on *United States v. Buckler*, 2011 WL 3439526 (E.D.N.Y. 2011).  Buckler, who had been convicted of passport fraud, had already served two and one-half years of the three-year term of supervision when he asked the Court to end his supervision six months early.  Buckler's only successful career given his attention deficit disorder was as a street magician and performer, and his supervision conditions prevented him from out of state travel and earning a living for him and his family.

*Buckler* does not support the defendant's motions.  First, unlike Buckler, the defendant has served only 15 months of his three-year term of supervised release.  Second, unlike Buckler, the defendant has numerous employment options to financially support himself and meet his restitution obligations.  Third, unlike Buckler whose recent job opportunities conflicted with his supervision, the defendant knew as early as November 2016 when his law license was suspended that the service of a criminal justice sentence prohibited for a time an application for readmission to practice law.  Fourth, unlike Buckler whose street performance jobs were immediate and real, there is no guarantee that the defendant will be readmitted to practice law.  And finally, unlike Buckler who entertained people in the street, Brinson used his law license for more than five years to facilitate a multimillion stock fraud scheme.

The defendant and the community will benefit from his continued supervision until at least April 2021 when he will have served two of the three years of supervision the Court imposed. First, the defendant currently has the benefit of the U.S. Probation Office to provide him guidance as needed and help him address the various issues he faces. As explained above, the defendant perceived himself as naïve. Therefore, his supervising Probation Officer will be available to assist him. Second, continued supervision of the sentence allows additional time for the defendant to fully appreciate the full extent of his criminal conduct, the sever harm it caused, and the consequences of using a law license to commit fraud. The Court's supervision will further hold the defendant accountable for his conduct as well as provide additional incentive to abide by the law.

Moreover, the 3553(a) statutory factors that the Court must consider on balance do not weigh in favor of early termination at this time:

- **The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553(a)(1))**: As noted above, the defendant as a licensed attorney engaged in serious criminal conduct by exploiting his law license. The defendant's conduct damaged the legal profession by further eroding the trust people and society place in lawyers. After breaching the public's trust in him, the defendant should continue to serve his supervision, abide by the law, and pay down the remaining $1.3 million in restitution to those victims of his conduct.

- **The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))**. The defendant's conduct required the Court to impose a sentence that made it "clear to the general society about the very significant severe costs that occur when somebody of your high position

does what you did." Doc. 31 at 115-16.  His conduct over the course of five years likely caused some to never trust lawyers.  The sentence, including the period of supervision, promote the respect for the law and justly punish the defendant.

- **The need to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))**.  The defendant's continued supervision is appropriate as a deterrence to his future criminal conduct.  Moreover, even if specific deterrence were not an issue for the defendant, general deterrence remains an important goal as it informs the public that the Court takes seriously lawyers who trade on their name and legal credentials to advance a fraud scheme.

- **The need to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))**.  As discussed, a defendant's service under the Court's supervision provides some measure of assurance further criminal will not occur or, if it does, it will more readily be detected.

- **The kinds of sentence available, the Guidelines calculation, and the need to avoid unwarranted sentencing disparities sentencing policy statements (18 U.S.C. §§ 3553(a)(4), (a)(5), and (A)(6))**.  The defendant received a sentence below the advisory Guidelines range of imprisonment.  The Guideline range, as a starting point, usually helps to avoid unwarranted sentencing disparities.  At the time of sentencing, the Court considered the defendant's good qualities and conduct, and presumably his plan if he were unable to practice law, a fact the Court noted would be very difficult in circumstances like his.  Doc. 31 at 71.

- **The need to provide restitution to any victims (18 U.S.C. § 3553(a)(7))**.  Repaying the victims is an important factor.  The defendant's expressed commitment to repay the victims is commendable.  He correctly notes in his memorandum that the Financial Litigation

Unit will continue do its level best to enforce the restitution order. Def. Mem. at 14. The Government has learned, however, that being under the Court's supervision provides extra incentives to pay restitution as ordered.

## Conclusion

For the foregoing reasons, the Government respectfully submits that the defendant's motion for early termination of supervised release should be denied at this time and granted should he successfully complete two of the three years of his supervision on April 21, 2021.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/
PETER S. JONGBLOED
ASSISTANT UNITED STATE S ATTORNEY
Federal Bar No. CT03192
157 Church Street, 23rd Floor
New Haven, CT 06510
Tel: (203) 821-3746
Peter.jongbloed@doj,gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2020, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/
PETER S. JONGBLOED
ASSISTANT UNITED STATES ATTORNEY